FILED

12/13/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0241

DA 22-0241

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 243N

IN RE THE PARENTING OF:

S.D. and B.D.,

    Minor Children,

JENNIFER A. DUCHARME, n/k/a BRICK,

      Petitioner and Appellant,

    and

RICHARD B. DUCHARME,

      Respondent and Appellee.

APPEAL FROM:     District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DR-17-140A
Honorable Andrew Breuner, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jennifer Brick, Self-Represented, Bozeman, Montana

    For Appellee:

        Matthew Dodd, Dillon A. Post, Dodd Law Firm, P.C., Bozeman, Montana

Submitted on Briefs:  November 16, 2022

Decided:  December 13, 2022

Filed:

           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jennifer Brick appeals the Eighteenth Judicial District Court's refusal to review her challenges to the Standing Master's Amended Final Parenting Plan when she failed to object within ten days. Brick challenges several of the Standing Master's rulings. She also appeals the District Court's decision to declare her a vexatious litigant when she continued to file motions requesting modification of the Amended Final Parenting Plan after the District Court upheld the Standing Master's decision. We affirm.

¶3 Jennifer Brick and Richard Ducharme have two minor daughters, S.D. and B.D. When the parties dissolved their marriage in 2017, they mediated a Final Parenting Plan, under the terms of which the children live primarily with Brick. Ducharme exercised his parenting rights under the Final Parenting Plan every other weekend, Wednesday afternoons, and some Monday afternoons. Ducharme also had parenting time over certain holidays and parts of the children's summer break.

¶4 In October 2019, Ducharme moved for contempt against Brick, alleging that she violated the Final Parenting Plan's schedule. The court referred the matter to the Standing Master. The following month, the Standing Master held Brick in contempt because (1) she did not create the "agreed upon" annual parenting time skeleton schedule and (2) she did

2

not allow Ducharme's ordered parenting time. Ducharme and Brick unsuccessfully attempted mediation to resolve these issues. In January 2020, Ducharme moved to amend the Final Parenting Plan. The Standing Master set a hearing; for various reasons the hearing was continued for almost a year. During the intervening period, Ducharme moved to enforce his right to parenting time because Brick indicated she would not allow Ducharme parenting time over the Thanksgiving holiday weekend. The Standing Master granted Ducharme's motion, finding that he was entitled to parenting time over the 2020 Thanksgiving weekend and "every other weekend thereafter."

¶5 The Standing Master held a two-day evidentiary hearing several weeks later to consider whether and how to amend the Final Parenting Plan. The Standing Master made oral rulings from the bench and requested that Ducharme's counsel draft an updated Amended Final Parenting Plan. Brick filed objections to the draft of the Amended Final Parenting Plan. Ducharme filed a motion to strike Brick's objections.

¶6 In January 2021, after reviewing both parties' filings, the Standing Master issued the Amended Final Parenting Plan. Under the amended plan, Brick maintained primary custody and Ducharme's parenting time continued to include every other weekend, Wednesday afternoons, and some Monday afternoons. The parties continued to alternate holidays. Ducharme was granted the amended opportunity to parent on pupil-instruction-related days and certain holidays. Additionally, the amended plan allowed the parties to each claim a tax benefit for one of the two children.

¶7 In July 2021, Ducharme filed another contempt motion against Brick, alleging that she blocked him from the children's phones and attempted to extort him into paying more

than his allotted share of the children's extracurricular expenses. In response, Brick counter-moved to hold Ducharme in contempt, moved to amend the Amended Final Parenting Plan, and moved to modify maintenance. Shortly after, Brick petitioned for a temporary order of protection on behalf of herself and the children—this petition was promptly denied. Brick again moved to modify the Amended Final Parenting Plan in September 2021. After unsuccessful mediation in October 2021, Brick filed another motion regarding the Amended Final Parenting Plan, requesting a hearing and petitioning for continued maintenance. The District Court rescinded its referral to the Standing Master in November 2021 after the Standing Master recused herself.

¶8      Brick entered a notice to the court referencing the 2021 Thanksgiving holiday, but this notice did not request any relief. In response, Ducharme filed an emergency motion to enforce his parenting time over the Thanksgiving holiday. The District Court found that Ducharme was entitled to parenting time as requested by his motion. Ducharme, however, was unable to exercise his Thanksgiving parenting time because of Brick's lack of communication. Ducharme filed another motion for contempt against Brick based on her alleged violations of the Amended Final Parenting Plan from March 2021 up to his filing.

¶9      In December 2021, the District Court denied Brick's motion to amend the Amended Final Parenting Plan. In the December 2021 Order, the court found that Brick's October 2021 Motion on the Amended Final Parenting Plan did not "provide additional relevant factors or arguments" to its decision. Despite the December 2021 Order, Brick continued to enter filings regarding the Amended Final Parenting Plan. Ducharme was forced to respond to these motions, and he eventually requested that the District Court deem Brick a

4

vexatious litigant for her attempts to relitigate issues the court had already settled. Brick kept filing motions requesting hearings on and modifications to the Amended Final Parenting Plan. Ducharme filed another request to deem Brick a vexatious litigant and to reduce her "duplicate responses."

¶10 Following a review of Brick's many filings, the court combined a status hearing with a show-cause hearing regarding Ducharme's request to declare Brick a vexatious litigant. After the combined hearing—which spanned two days—the court entered an order in April 2022 denying all of Brick's pending motions and requests and declaring her a vexatious litigant. The court subjected Brick's filings to pre-filing court review until she retained counsel.

¶11 Brick challenges the following: the November 2019 Contempt Citation; the process by which the Standing Master issued the Amended Final Parenting Plan; the District Court's statutory process when it did not undertake review after the Standing Master denied Brick's objections; the District Court's refusal to conduct a hearing as Brick requested in her October 2021 Motion; and the April 2022 Order denying Brick's pending requests and declaring her a vexatious litigant.

¶12 "Two standards of review are relevant in cases involving both a standing master and the district court: the standard the district court applies to the master's report and the standard we apply to the district court's decision." *Davis v. Davis*, 2016 MT 52, ¶ 4, 382 Mont. 378, 367 P.3d 400 (quoting *In re Marriage of Kostelnik*, 2015 MT 283, ¶ 15, 381 Mont. 182, 357 P.3d 912 (citation omitted)). "We . . . review a pre-filing order entered against a vexatious litigant for abuse of discretion." *Boushie v. Windsor*, 2014 MT 153,

5

¶ 8, 375 Mont. 301, 328 P.3d 631 (citing *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1056 (9th Cir. 2007)).

¶13 Brick's challenges can be divided into two categories: untimely and timely appeals. We first dispose of the issues Brick raises on appeal that are not properly before this Court. We then consider those that Brick timely raised.

*Brick's Untimely Challenges*

¶14 Our appellate rules require a notice of appeal to be filed within thirty days "from the date of entry of the judgment or order from which the appeal is taken." M. R. App. P. 4(5)(a)(i). When a party does not appeal a legal decision "when the opportunity to do so exists, [the decision] becomes the law of the case for the . . . course of that litigation and the party that does not appeal is deemed to have waived the right to attack that decision . . . ." *McCormick v. Brevig*, 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352.

¶15 Appeals, generally, may be taken only from final judgments. M. R. App. P. 6(1). A final judgment "conclusively determines the rights of the parties and settles all claims in a controversy in an action or proceeding . . . ." M. R. App. P. 4(1)(a). With limited exceptions not applicable here, rulings that leave "matters in the litigation undetermined" are not by themselves appealable. M. R. App. P. 6(5)(a). Brick raises a number of challenges that are untimely appeals of final judgments or orders that were later addressed in final judgments.

¶16 First, Brick challenges the November 19 Contempt Citation, arguing that it "substantially impacted [her] rights" when its issuance eventually led to the Amended Final Parenting Plan. Typically, the "judgment and orders of the court . . . made in cases of

contempt are final and conclusive." Section 3-1-523(1), MCA. Except in a narrow family law exception, contempt orders are not appealable. Section 3-1-523(1), (2), MCA; *Lee v. Lee*, 2000 MT 67, ¶ 37, 299 Mont. 78, 996 P.2d 389 ("lone contempt order[s]" are not reviewable on direct appeal). Under the family law exception, a party may appeal "from a contempt judgment . . . when . . . the judgment or order appealed from includes an ancillary order entered as a result of the contemptuous conduct which affects the substantial rights of the parties involved[.]" M. R. App. P. 6(3)(j). The Contempt Citation offered Brick a means to cure her contempt by mediating the parties' disagreements on the Final Parenting Plan. The parties were to follow the Final Parenting Plan until "the parties jointly create[d] another schedule and [had] it approved by the court." When the mediation was unsuccessful, the parties went before the Standing Master. This resulted in an Amended Final Parenting Plan. Assuming this chain of events met the family law exception to the general bar on appealing contempt orders, Brick cannot challenge this issue on appeal because she failed to bring her appeal within thirty days of the Contempt Citation's entry. M. R. App. P. 4(5)(a)(i), 6(3)(j). If it did not meet the family law exception, Brick's challenge still is untimely because she failed to seek a writ of certiorari (also known as a writ of review) within thirty days of the contempt order. Section 3-1-523, MCA; *see Jones v. Mont. Nineteenth Jud. Dist. Ct.*, 2001 MT 276, ¶ 22, 307 Mont. 305, 37 P.3d 682.

¶17 Similarly, Brick failed to properly preserve the issues she now raises regarding the process by which the Standing Master modified the Final Parenting Plan. The District Court entered a final judgment on the Standing Master's Amended Final Parenting Plan in its December 2021 Order denying Brick's motions to modify it. Brick did not appeal this

order within thirty days of its entry. Therefore, she waived any challenges finalized by the December 2021 Order, including her arguments that the Standing Master failed to give Brick adequate notice of a pending hearing, did not take testimony from Brick, and did not sufficiently incorporate Findings of Fact and Conclusions of Law into its order modifying the Final Parenting Plan. *See McCormick*, ¶ 38. Also among those challenges waived is Brick's contention that the District Court abused its discretion when it denied her October 2021 Motion requesting a hearing on the Amended Final Parenting Plan. Because Brick's October 2021 Motion was denied in the December 2021 Order, which was an appealable final order, Brick waived this challenge when she did not appeal it within the requisite time limit.

*Brick's Timely Challenges*

¶18 Brick timely appealed the District Court's April 2022 Order. Brick filed her challenge to this Order on May 9, 2022, within thirty days of its entry on April 18, 2022. Of the decisions the District Court entered in its April 2022 Order, Brick appeals only the District Court's denial of her request to review her case and the declaration that Brick is a vexatious litigant. We first consider the District Court's refusal to review Brick's objections to the Standing Master's order issuing the Amended Final Parenting Plan.

¶19 "We review a district court's decision *de novo* to determine whether it applied the correct standard of review to a standing master's findings of fact and conclusions of law." *Davis*, ¶ 4 (citation omitted). A district court reviews a standing master's findings of fact for clear error and conclusions of law for correctness. *Kostelnik*, ¶ 15.

8

¶20 In January 2022, Brick requested that the District Court review the Amended Final Parenting Plan by granting her leave to file "late objections." Section 3-5-126(2), MCA, requires that a party object to a standing master's decision within ten days of service of notice upon the party that findings and conclusions or orders have been filed. Here, the Standing Master entered the Amended Final Parenting Plan in January 2021. The Standing Master's order expressly referenced oral findings of fact and conclusions of law. Brick did not file timely objections or enter any other filing after the issuance of the Amended Final Parenting Plan until August 2021—and she did not question the finality of the Amended Final Parenting Plan in this filing. Brick did not request that the District Court review her objections to the Amended Final Parenting Plan until over a year after its issuance. The District Court properly denied Brick's request for review because it correctly found that she made this request well past the available time window to object to a standing master's judgment. *See* § 3-5-126(2), MCA; *Beals v. Beals*, 2013 MT 120, ¶ 13, 370 Mont. 88, 300 P.3d 1158.

¶21 We next consider the District Court's decision to declare Brick a vexatious litigant. Though Article II, Section 16, of the Montana Constitution guarantees each person access to state courts, this access may "be reasonably restricted in light of a 'legitimate state interest.'" *Boushie*, ¶ 19. This constitutional right does not "grant a person license to burden the resources of the court with successive claims." *Motta v. Granite Cty. Comm'rs*, 2013 MT 172, ¶ 18, 370 Mont. 469, 304 P.3d 720 (citation omitted). "Montana district courts possess inherent power to sanction willful or reckless conduct, especially when combined with frivolousness, harassment, or improper purpose." *Boushie*, ¶ 19 (citation

omitted). This Court has adopted the following five factors to determine whether litigants may be appropriately restricted in their access to the court by being declared vexatious:

1. the litigant's history of litigation and, in particular, whether it has entailed vexatious, harassing, or duplicative lawsuits;

2. the litigant's motive in pursuing the litigation; e.g., whether the litigant has an objective good faith expectation of prevailing;

3. whether the litigant is represented by counsel;

4. whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

5. whether other sanctions would be adequate to protect the courts and other parties.

*Motta*, ¶ 20 (citing *Molski*, 500 F.3d at 1058).

¶22 When reviewing a district court's decision to declare a litigant vexatious, we consider whether "the trial judge acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Boushie*, ¶ 8. We affirm a district court's "entry of a pre-filing order to address problems with a vexatious litigant where the court's order was supported by detailed findings that address [the five] factors." *Boushie*, ¶ 19 (citing *Motta*, ¶¶ 22-23).

¶23 Here, the District Court concluded, after a hearing on the matter and consideration of the extensive filing record, that the five *Motta* factors weighed in favor of declaring Brick a vexatious litigant. The court found that Brick filed "over 13 separate documents that seek to amend, in whole or part," the Amended Final Parenting Plan after the District Court repeatedly denied these requests. The court also considered Brick's "good faith expectation of prevailing" and found that because she had received "multiple final orders

10

that explicitly denied any amendments" to the Amended Final Parenting Plan, she could not reasonably expect a different outcome from her renewed motions requesting similar relief. Though the court noted its consideration of Brick's self-representation, it determined that a lack of trained counsel could not excuse the undue burden that her repeated filings placed on the court and its staff. The court considered further the financial hardship that Brick's "duplicative and voluminous filings on matters already litigated, adjudicated and decided by the [c]ourt" placed on Ducharme. The court noted that it had "processed and expended significant time and staff to handle the over seventy-five . . . subsequent documents filed" after issuance of the Amended Final Parenting Plan. Finally, the court determined that a pre-filing order would be sufficiently narrowly tailored to recognize Brick's right to access the court and still "address the overwhelming burden" to the court and the "financial hardship" suffered by Ducharme. The court did not impose any attorney's fees on Brick, and it emphasized that Brick could still access the court "with respect to any good faith filings that reasonably and sufficiently contend meritorious issues in accordance with Montana law." Based on our review of the record and of the District Court's detailed explanation, we conclude that the court appropriately weighed the requisite factors and did not abuse its discretion when it sanctioned Brick as a vexatious litigant by imposing a pre-filing order.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. The District Court properly reviewed the findings of fact and conclusions of law regarding the Standing

11

Master's decisions and did not abuse its discretion when it declared Brick a vexatious litigant. The District Court's orders are affirmed.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR